EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Julio Cardona Caraballo<br><br>Peticionario<br><br>v.<br><br>Autoridad de Carreteras y Transportación<br><br>Recurrida | Certiorari<br><br>2016 TSPR 242<br><br>196 DPR ____ |

Número del Caso: CC-2014-200

Fecha: 9 de diciembre de 2016

Tribunal de Apelaciones:

    Región Judicial de San Juan-Panel IV

Abogado de la Parte Peticionaria:

    Lcdo. Juan R. Dávila Díaz

Abogados de la Parte Recurrida:

    Lcdo. Salvador F. Rovira Rodríguez
    Lcdo. Juan Carlos Villafañe Conde

Materia: Derecho Laboral: Pago de los gastos por concepto de dietas y millaje constituye un beneficio económico que se puede reclamar al amparo de la Ley Núm. 180-1998, conocida como Ley de salario mínimo, vacaciones y licencia por enfermedad de Puerto Rico.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Julio Cardona Caraballo

    Peticionario

       v.                      CC-2014-200      Certiorari

Autoridad de Carreteras y
Transportación

    Recurrida

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 9 de diciembre de 2016.

Este caso nos brinda la ocasión para determinar si el pago de los gastos por concepto de dietas y millaje constituye un beneficio económico que los empleados pueden reclamar al amparo del Art. 11(a) de la Ley Núm. 180-1998, conocida como *Ley de salario mínimo, vacaciones y licencia por enfermedad de Puerto Rico*, *infra*.

Expongamos los antecedentes fácticos y procesales que nos auxiliarán a resolver las controversias que nos ocupan.

**I**

Este caso tiene su génesis, el 3 de diciembre de 2010, cuando el aquí peticionario,

Sr. José J. Cardona Caraballo (señor Cardona Caraballo), y varios empleados pertenecientes a la Unión de Trabajadores de la Autoridad de Carreteras (UTAC) presentaron una *Demanda* ante el Tribunal de Primera Instancia contra la Autoridad de Carreteras y Transportación (ACT).[1] En ésta, reclamaron el reembolso de los gastos por concepto de dietas y millaje adeudados desde el 1 de julio de 2010. Para ello, se ampararon en el Art. LIV del Convenio Colectivo suscrito entre la ACT y la UTAC (Convenio Colectivo), el Art. 7(a) de la Ley Núm. 74 de 23 de junio de 1965, 9 LPRA sec. 2007(a), y el Reglamento Núm. 09-001 sobre *Gastos de viaje y representación*. Además, solicitaron la imposición de la penalidad contemplada en el Art. 11(a) de la Ley Núm. 180-1998 (Ley Núm. 180), 29 LPRA sec. 250i, la cual se refiere a recibir una cantidad adicional igual a la que se le haya dejado de satisfacer, por concepto de salarios, beneficios, vacaciones o licencias por enfermedad dejadas de pagar con los intereses y honorarios de abogado correspondientes.

En lo pertinente, los demandantes indicaron que la falta de pago les causó daños a su poder adquisitivo y patrimonial, ya que en su faena diaria han incurrido en gastos en beneficio de la ACT y no han recibido su justa

---

[1] Transcurridos varios incidentes procesales, se presentó una *Demanda Enmendada* en la cual la Unión de Trabajadores de la Autoridad de Carreteras (UTAC) compareció en representación de toda su matrícula de unionados.

compensación. Para fundamentar su petitorio, éstos sostuvieron que el Art. LIV, el cual regula lo concerniente al reembolso de los gastos de dietas y millaje, continuó vigente luego de la fecha de vencimiento del Convenio Colectivo.

En respuesta, ACT admitió que no había reembolsado los gastos de dietas y millaje reclamados y reconoció que había incumplido con el pago por alegadamente el Convenio Colectivo haber expirado el 30 de junio de 2010 y el Art. LIV no tener vigencia indefinida e independiente. Asimismo, alegó que se encontraba en proceso de atender las reclamaciones de dietas y millaje que fueran procedentes, mientras se negociaba y firmaba un nuevo convenio colectivo.

Posteriormente, la UTAC presentó una *Moción Urgente en Solicitud de Remedio*. En ésta, informó que la ACT había emitido una resolución administrativa y comenzado a pagar las partidas de dietas y millaje a sus miembros, sin contar con el consentimiento de éstos, para burlar la jurisdicción del foro primario en cuanto a cualquier controversia relacionada con las cantidades y penalidades reclamadas, incluyendo evadir la penalidad dispuesta en la Ley Núm. 180. Por tanto, solicitó que se le ordenara a la ACT descontinuar dicho proceder.

Ante ello, la ACT presentó un escrito intitulado *Oposición a Moción Urgente y Moción Solicitando se Dicte*

_____

*Sentencia Sumaria*. En lo pertinente, arguyó que debido a que el Convenio Colectivo expiró el 30 de junio de 2010, no tenía facultad legal para efectuar los pagos de dietas y millaje reclamados, toda vez que no disponía de una fórmula que lo regulara. Informó que comenzó a efectuar los reembolsos, ya que el 8 de marzo de 2011 aprobó una resolución administrativa que se lo permitía. Por tanto, adujo que el pleito se había tornado académico. De igual forma, alegó que era improcedente la penalidad dispuesta en la Ley Núm. 180, pues la reclamación instada no se relaciona a salarios, beneficios, vacaciones o licencias por enfermedad dejadas de pagar. Así las cosas, solicitó que se dictara sentencia sumaria y se desestimara el pleito por academicidad.

Oportunamente, la UTAC se opuso a la solicitud de sentencia sumaria incoada por la ACT. En esencia, argumentó que no procedía la disposición sumaria del pleito debido a que la ACT no sustentó su alegación de que el Art. LIV no tenía vigencia propia más allá de la fecha de expiración del Convenio Colectivo. Afirmó que el lenguaje del convenio era claro en cuanto a que el Art. LIV tiene su propia vigencia, lo que significa que continuó con pleno vigor luego del 30 de junio de 2010. De esta forma, adujo que la ACT siempre mantuvo la facultad legal para efectuar los pagos requeridos y no lo hizo.

A su vez, la UTAC indicó que el pleito no era académico, toda vez que no tan solo solicitan el reembolso de los gastos de dietas y millaje, sino también la penalidad establecida en la Ley Núm. 180. En ese sentido, la UTAC sostiene que la ACT comenzó a realizar los pagos, valiéndose de una resolución administrativa, con el fin de tornar el caso en académico y evadir esa penalidad.

Por su parte, la ACT presentó una dúplica en la cual expresó que la interpretación ofrecida por la UTAC sobre el Convenio Colectivo no tenía fundamento. Señaló que aunque el Convenio Colectivo establece que tendrá una vigencia del 1 de julio de 2006 al 30 de junio de 2010 y que el Art. LIV contiene su propia vigencia, esto último se refiere a la fecha en que el artículo entraría en vigor; es decir, diez (10) días luego de la firma del Convenio Colectivo. Según la ACT, si la intención de las partes era que el Art. LIV tuviera una vigencia indefinida, así lo hubieran pactado expresamente.

Examinadas las posturas de las partes, el 31 de mayo de 2011, el Tribunal de Primera Instancia emitió una Sentencia Parcial mediante la cual concluyó que no existía controversia real ni sustancial sobre los hechos esenciales, por lo que procedía disponer del caso de forma sumaria parcial. A tales efectos, dictaminó que el Art. LIV continuó vigente luego de la fecha de expiración del Convenio Colectivo, ya que claramente

estaba exceptuado de ésta. Además, determinó que el pleito no era académico, pues se cumplen varias de las excepciones a la doctrina de la academicidad, a saber: (1) la controversia de autos es susceptible de repetirse cada vez que expire un convenio colectivo entre las partes; (2) la ACT ha intentado modificar los hechos del caso aprobando una resolución administrativa, pero el cambio no es permanente; y (3) subsiste una reclamación colateral, debido a que se solicita la penalidad dispuesta en la Ley Núm. 180.

A su vez, el foro primario razonó que en el caso de epígrafe era de aplicación lo dispuesto en el Art. 11(a) de la Ley Núm. 180. Ello, por entender que el reembolso por concepto de dietas y millaje es un beneficio económico que está contemplado en la aludida legislación. En vista de lo anterior, ordenó determinar la cuantía a ser pagada por la ACT. En desacuerdo con lo resuelto, la ACT solicitó reconsideración, pero fue denegada.

Así las cosas, la ACT acudió ante el Tribunal de Apelaciones. Aquilatados los argumentos de las partes, el 16 de agosto de 2013, el foro apelativo intermedio emitió una Sentencia mediante la cual revocó el dictamen recurrido y desestimó el pleito. Razonó que éste era académico, ya que el 8 de marzo de 2011 la ACT aprobó la Resolución Núm. 2011-09, mediante la cual estableció la forma en que debían realizarse los pagos de dietas y

millaje. Para el Tribunal de Apelaciones, la aprobación de la resolución permitió que la ACT comenzara el reembolso de los pagos de dietas y millaje correspondientes. Por ende, entendió que no existía una controversia justiciable.

Además, el foro apelativo intermedio determinó que el Tribunal de Primera Instancia incidió al concluir que el Art. LIV permanecería vigente, aun vencido el Convenio Colectivo. Indicó que ello no surgía expresamente del convenio. En disconformidad, los demandantes presentaron una solicitud de reconsideración, pero fue declarada no ha lugar.

Inconforme, el señor Cardona Caraballo recurre ante este Tribunal mediante recurso de *certiorari*. En esencia, señala que el Tribunal de Apelaciones erró al determinar lo siguiente: (1) que el caso de autos es académico; (2) que el Art. LIV no continuó vigente luego de la fecha de vencimiento del Convenio Colectivo; y (3) que los reembolsos reclamados no son el tipo de beneficio económico que contempla el Art. 11(a) de la Ley Núm. 180. Examinado el recurso de *certiorari* presentado, el 31 de octubre de 2014, emitimos una Resolución mediante la cual expedimos el auto.

En su comparecencia ante este Tribunal, el señor Cardona Caraballo reproduce los argumentos esgrimidos ante los foros recurridos. Esto es, sostiene que la ACT adeuda el reembolso de los gastos por concepto de dietas

y millaje a partir del 1 de julio de 2010. Reitera que la ACT siempre mantuvo su obligación legal de efectuar los pagos reclamados, debido a que el Convenio Colectivo es claro al indicar que el Art. LIV tiene vigencia propia más allá del 30 de junio de 2010. Es decir, que el Art. LIV está exceptuado de la fecha de expiración del Convenio Colectivo.

De igual forma, el señor Cardona Caraballo argumenta que el pleito no es académico, pues se cumplen varias de las excepciones dispuestas en nuestro ordenamiento. Señala que tras la presentación de la reclamación judicial, la ACT comenzó a efectuar los pagos, valiéndose de una resolución administrativa, en aras de tornar el caso en académico y evadir la penalidad que establece el Art. 11(a) de la Ley Núm. 180. Además, plantea que el Art. 11(a) de la Ley Núm. 180 es de aplicación al caso de autos, pues arguye que el reembolso de los gastos por concepto de dietas y millaje es parte de los beneficios que conllevan una aportación económica de parte del patrono. Amparado en todo lo anterior, solicita que revoquemos el dictamen emitido por el Tribunal de Apelaciones.

Por su parte, la ACT comparece mediante *Alegato de la Parte Recurrida*, en el cual también reproduce los argumentos planteados ante los foros recurridos. En otras palabras, expresa que a partir del 1 de julio de 2010 dejó de efectuar los pagos de dietas y millaje

reclamados por razón de que el Convenio Colectivo expiró el 30 de junio de 2010. Alega que por tal motivo no contaba con una fórmula legal que regulara el desembolso de los pagos. En ese sentido, plantea que en el Convenio Colectivo no se dispuso que el Art. LIV tuviera una vigencia indefinida e independiente.

Del mismo modo, la ACT señala que desde el momento en que se aprobó la Resolución Núm. 2011-08, la cual regula de manera interina el desembolso de gastos de dietas y millaje retroactivo al 1 de julio de 2010, el pleito se tornó académico. Informa que la aludida resolución fue enmendada por la Resolución Núm. 2011-13, para extenderla hasta la firma de un nuevo convenio. Por último, la ACT aduce que la Ley Núm. 180 es inaplicable a la reclamación instada porque ésta no se relaciona a salarios, beneficios, vacaciones o licencias por enfermedad dejadas de pagar. A la luz de lo anterior, solicita que confirmemos la Sentencia emitida por el Tribunal de Apelaciones.

Expedido el recurso de *certiorari* y con el beneficio de la comparecencia de ambas partes, resolvemos.

**II**

**A.**

En términos generales, un convenio colectivo es un acuerdo por escrito efectuado entre una organización obrera y un patrono, en el cual se especifican los

términos y condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que se susciten durante la vigencia del mismo. COPR v. SPU, 181 DPR 299, 319 (2011); *véanse*, además, M. Méndez Ballester, Vocabulario obrero-patronal, San Juan, Puerto Rico, 1962, pág. 25; H.R. Arroyo-Aguilar, Léxico laboral puertorriqueño: diccionario de términos jurídicos sobre el Derecho del trabajo, Ediciones Situm, San Juan, Puerto Rico, 2010, pág. 68. Los convenios colectivos se consideran instrumentos útiles para la promoción de la política pública laboral del Estado, por lo que están revestidos de un alto interés público. COPR v. SPU, *supra*, pág. 321; JRT v. Junta Adm. Muelle Mun. de Ponce, 122 DPR 318, 330 (1988). Además, se ha afirmado que la celebración de éstos fomenta la paz laboral, ya que permiten resolver de forma pacífica las controversias obrero-patronales que acontezcan. COPR v. SPU, *supra*, pág. 321.

Es doctrina reiterada que los convenios colectivos son contratos y, como tal, tienen fuerza de ley entre las partes. COPR v. SPU, *supra*, pág. 320; CFSE v. Unión de Médicos, 170 DPR 443, 451 (2007); JRT v. Junta Adm. Muelle Mun. de Ponce, *supra*, pág. 333; *véase*, además, Art. 1044 del Código Civil de Puerto Rico, 31 LPRA sec. 2994. Claro está, siempre que no contravengan las leyes, la moral o el orden público. *Véase* Art. 1207 del Código

Civil de Puerto Rico, 31 LPRA sec. 3372. Ello significa que al pactar el contenido de un convenio colectivo, las partes deben cumplirlo con estricta rigurosidad. COPR v. SPU, *supra*, pág. 320; CFSE v. Unión de Médicos, *supra*, pág. 451; Martínez Rodríguez v. AEE, 133 DPR 986, 995 (1993). Esto, pues, el convenio colectivo obliga al patrono, a la unión y a los miembros individuales de la unión. COPR v. SPU, *supra*, pág. 320; San Juan Mercantile Corp. v. JRT, 104 DPR 86, 89 (1975). Por consiguiente, ni el patrono ni los empleados pueden pretender beneficiarse de ciertas cláusulas y rechazar otras. COPR v. SPU, *supra*, pág. 320; San Juan Mercantile Corp. v. JRT, *supra*, pág. 89.

**B.**

Es menester indicar que el Art. 7(a) de la Ley Núm. 74 de 23 de junio de 1965, conocida como *Ley de la Autoridad de Carreteras y Transportación de Puerto Rico*, dispone expresamente que "[l]os funcionarios y empleados de la Autoridad tendrán derecho al reembolso de los gastos de viaje necesarios o en su lugar a las dietas correspondientes que sean autorizadas por reglamentos aprobados por la Autoridad". 9 LPRA sec. 2007(a). Específicamente, el Reglamento Núm. 09-001 sobre *Gastos de viaje y representación*, fue aprobado por la ACT el 16 de mayo de 1992, con el propósito de establecer las normas a seguir por los funcionarios y empleados de la ACT relacionadas con los gastos de viaje y

representación. Además, se promulgó con el fin de decretar las dietas y millaje que se pagarán por concepto de dichos viajes. *Véase* Apéndice de la petición de *certiorari*, págs. 94-124. Cabe señalar que el Art. V(A) del reglamento dispone que "los empleados unionados que reclamen dieta, millaje y alojamiento, recibirán el reembolso por los gastos a tono con el convenio colectivo vigente". Íd., pág. 99.

## C.

Cónsono con lo anterior, la ACT y la UTAC suscribieron un Convenio Colectivo el 5 de julio de 2006, en el cual pactaron varios asuntos obrero-patronales y se comprometieron a no violar sus términos. *Véase* Convenio Colectivo, Apéndice de la petición de *certiorari*, pág. 134. En lo que concierne a la controversia ante nos, la ACT y la UTAC acordaron expresamente en el Art. LX del convenio que éste tendría "una vigencia del 1ro de julio de 2006 al 30 de junio del año 2010, **salvo las siguientes cláusulas que contienen su propia vigencia**: a) Artículo XLVIII 'Bonificación Por Firma De Convenio'; b) **Artículo LIV 'Dietas y Millaje'**". Íd., pág. 246. (Énfasis suplido). Por su parte, la Sec. 4 del Art. LX dispone que el término de vigencia del Convenio Colectivo, a partir de la fecha de vencimiento, quedará automáticamente renovado, a menos que una parte notifique por escrito -con sesenta (60) días de anticipación a la fecha de

vencimiento del convenio- su derecho a terminarlo, enmendarlo o modificarlo. Íd.

Conforme se adelantó, específicamente el Art. LIV del Convenio Colectivo regula todo lo concerniente al pago de dietas y millaje. De esta forma, la Sec. 1 de ese artículo define "dietas" como la cantidad de dinero que se les reembolsa a los empleados que ejecutan una misión oficial para cubrir los costos de desayuno, almuerzo, comida y alojamiento, cuando son requeridos a ejercer sus funciones fuera de donde normalmente está ubicado su centro de trabajo. Íd., pág. 231. La sección advierte que el pago es reembolsable siempre y cuando la distancia sea en exceso de tres millas recorridas. Íd.

En las secciones 2 a la 8 el Art. LIV se desglosan las normas aplicables al reembolso de gastos por concepto de dietas y millaje. Íd., págs. 232-234. Además, la Sec. 9 indica que el Reglamento Núm. 09-001 regulará todo aquello que no estuviera dispuesto en el Art. LIV, en lo concerniente al pago de dietas y millaje. Íd., pág. 234. Por su parte, la Sec. 10 establece que el Art. LIV entra en vigencia diez (10) días después de firmado el Convenio Colectivo. Íd.

## III

Sabido es que la Ley Núm. 180, conocida como *Ley de salario mínimo, vacaciones y licencia por enfermedad de Puerto Rico*, 29 LPRA sec. 250 *et seq.*, se promulgó con el fin de, entre otros aspectos trascendentales en

materia de derecho laboral, velar por la protección de los derechos de los empleados, disponer los pormenores de sus reclamaciones y establecer las penalidades aplicables. (1998 (Parte I) Leyes de Puerto Rico 692-706); *véase*, además, R.N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el Derecho Laboral puertorriqueño, San Juan, Puerto Rico, 2005, págs. 210-214. A grandes rasgos, la Ley Núm. 180 tuvo el efecto de atemperar las disposiciones contenidas en la antigua Ley de Salario Mínimo con la *Fair Labor Standards Act of 1938*, 29 USCA sec. 201 *et seq.*, y uniformar todo lo relacionado con las licencias por enfermedad y vacaciones. Arce Brucetta v. Motorola, 173 DPR 516, 529 (2008); González v. Merck, 166 DPR 659, 670-671 (2006).

En lo que atañe al caso de epígrafe, el Art. 11(a) de la ley señala que:

> Todo obrero o empleado que por su trabajo reciba compensación inferior a la prescrita en esta Ley o en un convenio colectivo o en un contrato individual de trabajo tendrá derecho a cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, por concepto de salario, vacaciones, licencia por enfermedad o **cualquier otro beneficio**, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de compensación adicional, además de los costos, gastos, intereses y honorarios de abogados del procedimiento, sin que para nada de ello obste pacto en contrario. 29 LPRA sec. 250i(a). (Énfasis suplido).

Como puede apreciarse, en la referida disposición estatutaria el legislador no optó por una lista taxativa o limitativa e incluyó expresamente la categoría de "cualquier otro beneficio". Mucho menos hizo exclusiones expresas con relación a ello. El historial legislativo de la Ley Núm. 180 guarda silencio en torno al alcance del concepto. Tampoco este Tribunal ha tenido ocasión de interpretar el precitado Art. 11(a). Por tanto, procede interpretar y pautar el alcance del concepto en controversia.

Para esa encomienda, resulta oportuno señalar que en su análisis sobre nuestra legislación laboral, el Lcdo. Alberto Acevedo Colom indica que como parte de todo convenio se negocian dos tipos de cláusulas, a saber: cláusulas económicas y cláusulas no económicas. A. Acevedo Colom, Legislación de relaciones del trabajo comentada, 1ra ed., 2007, San Juan, Puerto Rico, Ramallo Printing, pág. 135. Éste explica que las *cláusulas económicas* son aquellas que abarcan los aspectos de compensación que en virtud del convenio cobijan a los empleados, así como **cualquier otro beneficio que conlleve una aportación económica por parte del patrono.** Íd. En ese sentido, el licenciado Acevedo Colom concluye que las cláusulas económicas pueden incluir lo siguiente: (1) los niveles de compensación de los empleados, entiéndase salarios, vacaciones y licencias por enfermedad; (2) la compensación correspondiente al

tiempo extra trabajado; (3) los bonos, incluyendo el de navidad y los de productividad; (4) las aportaciones patronales a los planes médicos, planes de retiro -que no sean el de Seguro Social-, planes de beneficios, entre otros; (5) **las dietas y millaje**; y (6) los pagos de estacionamiento. Íd.

Examinado lo anterior, conjuntamente con el texto claro de la Ley Núm. 180, no existe razón para que este Tribunal excluya el beneficio del reembolso de los gastos de dieta y millaje de los beneficios enumerados en el Art. 11(a) de la Ley Núm. 180. Sin duda, al igual que opina el licenciado Acevedo Colom, concluimos que las dietas y millaje constituyen beneficios que conllevan una aportación económica por parte del patrono. Por consiguiente, resolvemos que el pago por concepto de dietas y millaje constituye un beneficio que los empleados tienen derecho a reclamar, conforme lo dispone el Art. 11(a) de la Ley Núm. 180.

Lo resuelto es cónsono con la reiterada norma de interpretación estatutaria en cuanto a que la exclusión de un empleado de los beneficios de la legislación laboral debe ser clara y que las leyes laborales deben interpretarse de forma liberal, resolviéndose toda duda de la manera más favorable al empleado, para así cumplir con sus propósitos eminentemente sociales y reparadores. Romero *et als*. v. Cabrer Roig *et als*., 191 DPR 643, 653 (2014); Whittenburg v. Col. Ntra. Sra. del Carmen, 182

DPR 937, 951 (2011); <u>SLG Rivera Carrasquillo v. AAA</u>, 177 DPR 345, 363 (2009); <u>Arce Brucetta v. Motorola</u>, *supra*, pág. 551. En otras palabras, es principio de hermenéutica que las leyes laborales deben ser interpretadas liberalmente para conceder al empleado la mayor protección de los derechos que el legislador estatuyó. <u>SLG Rivera Carrasquillo v. AAA</u>, *supra*, pág. 363. Recuérdese, pues, que la finalidad de nuestra legislación laboral es promover la justicia social a la clase trabajadora, garantizando la mayor protección de sus derechos laborales.

Expuesta la normativa pertinente, procedemos a aplicarla a la controversia que nos ocupa.

## IV

En primer lugar, este caso nos exige precisar la necesidad, si alguna, de determinar si el Art. LIV del Convenio Colectivo o las Resoluciones corporativas emitidas por la ACT son las que regulan, lo concerniente al reembolso de los gastos por concepto de dietas y millaje.[2] Esto, con el fin de resolver si a partir del 1 de julio de 2010, la ACT contaba con una fórmula legal para el desembolso de los pagos reclamados. Con relación a ello, el señor Cardona Caraballo sostiene que el Art. LX del Convenio Colectivo es claro al establecer que el

---

[2] **Valga aclarar que no existe controversia en cuanto a que la ACT debe el reembolso de los gastos por concepto de dietas y millaje y que está obligada a efectuarlo.**

Art. LIV tiene vigencia propia más allá del 30 de junio de 2010. Es decir, argumenta que el Art. LIV está exceptuado de la fecha de expiración del Convenio Colectivo.

Por su parte, la ACT expresa que a partir del 1 de julio de 2010 dejó de efectuar los pagos de dietas y millaje reclamados por motivo de que el Convenio Colectivo expiró el 30 de junio de 2010 y no contaba con una fórmula legal que regulara su desembolso. Según la ACT, el Convenio Colectivo no dispone expresamente que el Art. LIV tiene una vigencia indefinida e independiente. Sin embargo, la ACT obvia que las Resoluciones corporativas emitidas establecieron, con efecto retroactivo al 1 de julio de 2010, la forma en que se harían los pagos a los empleados unionados por concepto de gastos de dietas y millaje, a fin de cumplir con el mandato legislativo.

Ante esa realidad, resulta innecesario pronunciarnos en torno a la vigencia o no del convenio colectivo; máxime cuando la ACT está obligada por mandato de ley a efectuar los pagos de dieta y millaje. Ante el requerimiento legislativo de que sean autorizados mediante reglamentación, la ACT promulgó el correspondiente Reglamento sobre Gastos de Viaje y representación, *supra*, y eventualmente las Resoluciones corporativas aludidas. Ante las particularidades del tracto procesal descrito, huelga determinar si el

reembolso en controversia surge en virtud del convenio colectivo o de las Resoluciones aprobadas con efecto retroactivo a la fecha que, precisamente, genera la discrepancia entre ambas partes, pero que nos conduce al mismo camino: el de proceder con los correspondientes pagos.

Disipado ese extremo, procede dictaminar si el pago por concepto de dietas y millaje constituye un beneficio de los que alude el Art. 11(a) de la Ley Núm. 180. Como expresamos, no existe razón para excluir el pago de las dietas y millaje de los beneficios económicos que los empleados pueden reclamar, al amparo del Art. 11(a) de la Ley Núm. 180. Así las cosas, y en vista de que tal pago se encuentra contemplado en nuestro ordenamiento, procede que remitamos el caso al Tribunal de Primera Instancia para determinar la cuantía a ser reembolsada por la ACT, por concepto de pago de dietas y millaje a partir del 1 de julio de 2010, más la penalidad solicitada, en virtud del Art. 11(a) de la Ley Núm. 180.

**V**

En mérito de lo expuesto, revocamos la determinación emitida por el Tribunal de Apelaciones. En consecuencia, remitimos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos ulteriores en armonía con lo aquí resuelto.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Julio Cardona Caraballo

    Peticionario

       v.                  CC-2014-200       Certiorari

Autoridad de Carreteras y
Transportación

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 9 de diciembre de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la determinación emitida por el Tribunal de Apelaciones. En consecuencia, se remite el caso al Tribunal de Primera Instancia para la continuación de los procedimientos ulteriores en armonía con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez concurre con el resultado con opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

                                   Juan Ernesto Dávila Rivera
                             Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Julio Cardona Caraballo

      Peticionario

                                *Certiorari*

      v.                  CC-2014-200

Autoridad de Carreteras y Transportación

      Recurrida

Opinión concurrente emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 9 de diciembre de 2016.

Concurro con la determinación de este Tribunal de aplicar la penalidad del Art. 11(a) de la Ley Núm. 180-1998, conocida como la *Ley de salario mínimo, vacaciones y licencia por enfermedad de Puerto Rico*, 29 LPRA sec. 250i, a los gastos por concepto de dietas y millaje reconocidos en el Art. 7(a) de la Ley Núm. 74 de 23 de junio de 1965, 9 LPRA sec. 2007(a). No obstante, no estoy de acuerdo en que resulta innecesario precisar si la base legal para esta compensación es el Art. LIV (en adelante, Artículo de Dietas y Millaje) del Convenio Colectivo entre la Autoridad de Carreteras y Transportación (ACT) y la Unión de Trabajadores

de la Autoridad de Carreteras (UTAC) o las resoluciones administrativas 2011-8 y 2011-13. Esto, pues, si dicho Artículo permaneció vigente, la base legal para el reembolso de los gastos de dietas y millaje era éste y no las resoluciones administrativas.

I

En primer lugar, corresponde analizar si el Artículo de Dietas y Millaje permaneció vigente luego de culminada la vigencia del Convenio el 30 de junio de 2010. La UTAC pretende atribuirle una vigencia permanente al Artículo de Dietas y Millaje. Basa su argumento en que el Art. LX (en adelante, Artículo de Vigencia) excluía del mismo al Artículo de Dietas y Millaje, el cual tendría su "propia vigencia". Por tanto, como el Artículo de Dietas y Millaje solo establecía cuándo comenzaba, y no cuándo culminaría, las partes acordaron expresamente que continuaría en vigor luego de concluido el Convenio. Apoya su argumento en el Art. 1233 del Código Civil, 31 LPRA sec. 3471, y su jurisprudencia interpretativa que establecen que si los términos de un contrato son claros hay que atenerse a su sentido literal. Véanse, por ejemplo CFSE v. Unión de Médicos, 170 DPR 443 (2007); Luce & Co. v. Junta Rel. Trabajo, 86 DPR 425 (1962) (aplicando a los convenios colectivos las normas de interpretación contractual).

No obstante, el Art. 1237 del Código Civil dispone que "[l]as cláusulas de los contratos deberán interpretarse las unas por las otras, atribuyendo a las dudosas el sentido

que resulte del conjunto de todas". 31 LPRA sec. 3475. Si analizamos conjuntamente el Artículo de Dietas y Millaje y el Artículo de Vigencia, debemos concluir que la fecha de culminación del Convenio y del Artículo de Dietas y Millaje es la misma: el 30 de junio de 2010. La sección 10 del Artículo de Dietas y Millaje establecía que "[e]ste Artículo entra en vigencia diez días luego de la firma de este Convenio Colectivo".[3] Por otro lado, el Artículo de Vigencia disponía que "[e]ste Convenio tendrá una vigencia del 1ro de julio de 2006 al 30 de junio del año 2010, salvo las siguientes cláusulas que contienen su propia vigencia: . . . Artículo LIV 'Dietas y Millaje'".[4] Así, el Artículo de Vigencia establecía una excepción para el Artículo de Dietas y Millaje solo porque éste tiene una **fecha de comienzo distinta.** Atribuirle al Artículo de Dietas y Millaje una vigencia infinita porque no dispuso nada sobre cuando culmina su vigencia contradeciría el sentido que resulta de ambas cláusulas: que el Artículo de Dietas y Millaje empezaría diez días luego de la firma del Convenio Colectivo, pero que culminaría el 30 de junio de 2010, al igual que el resto del Convenio.

A diferencia del análisis aquí realizado, la Opinión Mayoritaria rehúsa pronunciarse sobre si el Artículo de Dietas y Millaje permaneció vigente. Sostiene esto basándose en que las resoluciones administrativas

---

[3] Convenio Colectivo, Apéndice pág. 198.
[4] Íd. pág. 210.

establecieron con efecto retroactivo la forma en que se harían los pagos. Esto resulta preocupante porque la misma Opinión reconoce que lo pactado en un convenio colectivo debe cumplirse con estricta rigurosidad. Véase COPR v. SPU, 181 DPR 299, 320 (2011). El Tribunal se contradice y sugiere que cuando se aprueban resoluciones administrativas con efecto retroactivo será innecesario examinar lo aprobado en un convenio colectivo o, más importante aún, si éste permaneció vigente. Así, pone en entredicho si mediante resoluciones administrativas se puede alterar lo aprobado en un convenio colectivo.

II

Por otro lado, como considero que el Artículo de Dietas y Millaje perdió su vigencia, corresponde examinar de dónde surge la obligación legal y la fórmula para el reembolso de los gastos reclamados. El Art. 7 de la Ley Núm. 74 de 23 de junio de 1965, dispone que "[l]os funcionarios y empleados de la Autoridad tendrán derecho al reembolso de los gastos de viaje necesarios o en su lugar a las dietas correspondientes que sean autorizadas por reglamentos aprobados por la Autoridad". 9 LPRA sec. 2007(a). Por otro lado, el Reglamento Núm. 09-001 sobre *Gastos de viaje y representación* señala en su artículo introductorio que "[e]l desarrollo satisfactorio de [las funciones de la ACT] hace necesario rembolsar a los funcionarios y empleados los gastos de viaje y de representación incurridos para desempeñar las mismas, para

lo cual, bajo las disposiciones de la ley deben establecerse normas de aplicación uniforme".[5] Sin embargo, en lugar de establecer cómo se harán estos reembolsos, el Reglamento establece que "[t]odos los empleados unionados que reclamen dieta, millaje y alojamiento, recibirán el rembolso por los gastos a tono con el convenio colectivo vigente".[6]

Al no existir ningún convenio colectivo con vigencia, la ACT atendió la ausencia de fórmula mediante la aprobación de las resoluciones administrativas 2011-8 y 2011-13. En la Resolución Núm. 2011-8, la ACT reconoció el derecho de sus empleados unionados a un reembolso por los gastos de dietas y millaje. A su vez, expresamente dispuso que "[s]e continuarán pagando las cantidades dispuestas en los Artículo LIV y LV del Convenio Colectivo con la UTAC que venció el 30 de junio de 2010" y estableció que estos pagos tendrán vigencia retroactiva al 1 de julio de 2010.[7] Por otro lado, estableció que "a partir del 1 de abril de abril de 2011 no se pagarán Dietas a ningún empleado, Regulares o Fijas".[8] No obstante, mediante la Resolución Núm. 2011-13, la ACT enmendó la Resolución Núm. 2011-8 y destacó que las disposiciones sobre dietas y millaje continuarán vigentes hasta que se firme un nuevo convenio colectivo.

---

[5] Reglamento de Gastos de Viaje y Representación, Apéndice pág. 60.
[6] Íd. pág. 63.
[7] Resolución Núm. 2011-8, Apéndice pág. 214.
[8] Íd. pág. 214.

Debido a que el Convenio Colectivo perdió su vigencia el 30 de junio de 2010, las resoluciones administrativas establecieron la base legal para el cómputo de los reembolsos e incorporaron la fórmula dispuesta en el Convenio Colectivo. Al otorgarle retroactividad al 1 de julio de 2010 llenaron el vacío que dejó la culminación del Convenio Colectivo. Por lo tanto, son estas resoluciones y no la supuesta vigencia perpetua del Artículo de Dietas y Millaje lo que da base legal al reclamo de los peticionarios.

### III

Finalmente, debo determinar si aplica la penalidad contemplada en el Art. 11(a) de la Ley Núm. 180. Coincido con el análisis que hace la Opinión Mayoritaria al concluir que la penalidad del Art. 11(a) de la Ley Núm. 180, supra, aplica a "cualquier . . . beneficio que conlleve una aportación económica por parte del patrono", entre ellos, las dietas y millaje.[9] Por tanto, si los empleados de la ACT tenían derecho a un reembolso por concepto de dietas y millaje, pero la ACT no los pagó, el empleado tiene derecho a la penalidad establecida en el Art. 11(a). La única diferencia es que la Opinión Mayoritaria se niega a resolver si la obligación emana del Convenio o de las resoluciones administrativas, mientras que a mi juicio el Convenio perdió su vigencia y la obligación surge de la Ley Habilitadora, el Reglamento Núm. 09-001 y de la Resolución

---

[9] Véase Opinión Mayoritaria, pág. 15.

Núm. 2011-8, la cual restableció lo dispuesto en el Convenio Colectivo sobre el pago de dietas y millaje.

IV

Al igual que la Opinión Mayoritaria revocaría el dictamen recurrido y remitiría el caso al Tribunal de Primera Instancia para la continuación de los procedimientos, pero por los fundamentos anteriormente expuestos.


Maite D. Oronoz Rodríguez
Jueza Presidenta