EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| American Federation Musicians, Local 555 (Unión)<br><br>Peticionario<br><br>v.<br><br>Corporación Sinfónica de Puerto Rico (Patrono)<br><br>Recurrido | Certiorari<br><br>2023 TSPR 25<br><br>211 DPR \_\_\_ |
|---|---|

Número del Caso: CC-2022-0146

Fecha: 8 de marzo de 2023

Tribunal de Apelaciones:

Panel V

Abogado de la parte peticionaria:

Lcdo. Miguel González Vargas

Abogado de la parte recurrida:

Lcdo. Luis R. Pérez Giusti

Materia: Sentencia con Opinión de Conformidad y Opinión Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| American Federation Musicians, Local 555 (Unión)<br><br>Peticionario<br><br>v.<br><br>Corporación Sinfónica de Puerto Rico (Patrono)<br><br>Recurrido | CC-2022-0146 | *Certiorari* |

**Sentencia**

En San Juan, Puerto Rico, a 8 de marzo de 2023.

Examinado y expedido el recurso de *Certiorari* instado en el caso de referencia, se revoca la *Resolución* emitida por el Tribunal de Apelaciones que, a su vez, confirmó la *Sentencia* dictada por el Tribunal de Primera Instancia. En virtud de esos dictámenes, los foros revisores confirmaron el *Laudo* mediante el cual el árbitro razonó que, conforme al Artículo Décimo del Convenio Colectivo, la Corporación Sinfónica de Puerto Rico tenía discreción para celebrar los conciertos a beneficio del plan de pensiones.

En consecuencia, se le concede al recurrido un término de dos (2) años, a partir de la notificación de esta Sentencia, para que celebre los conciertos necesarios a los fines de sufragar la aportación patronal a beneficio del plan de pensiones correspondiente a la temporada 2018-2019; o en la alternativa, emita un pago por $80,000.00 adicional a las costas y honorarios de abogado, según proceda.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera García emitió una Opinión de Conformidad a la cual se le unen la Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez. El Juez Asociado señor Martínez Torres emitió una Opinión Disidente a la cual se le unen los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón.

María I. Colón Falcón
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| American Federation Musicians, Local 555 (Unión)<br><br>Peticionario<br><br>v.<br><br>Corporación Sinfónica de Puerto Rico (Patrono)<br><br>Recurrido | CC-2022-0146 | *Certiorari* |

**Opinión de Conformidad emitida por el Juez Asociado señor Rivera García a la cual se le unen la Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez.**

En San Juan, Puerto Rico, a 8 de marzo de 2023.

La Sentencia que hoy emite este Tribunal se cimienta en la importancia de honrar las actuaciones de unos contratantes según exige un Convenio Colectivo. Así pues, nuestra intervención para dilucidar la presente controversia se centraba en interpretar el lenguaje utilizado en un Convenio Colectivo entre la Corporación de la Orquesta Sinfónica de Puerto Rico (COSPR o recurrida) y la *American Federation Musicians,* Local 555 (Unión o peticionaria). A saber, si el término "podrá" que surge del Artículo Décimo del Convenio Colectivo, tuvo el efecto de compelir a la COSPR a la celebración de cuatro (4) conciertos por temporada con el propósito de incrementar el plan de pensiones de los músicos.

Toda vez que una mayoría de este Tribunal avala un desenlace justo para las partes de epígrafe, estoy conforme. No puedo desaprovechar la oportunidad, sin consignar en detalle los principios que, acorde a los hechos particulares del presente recurso, me convencen que la interpretación más certera del término "podrá" es aquella que le imparte un **carácter mandatorio** y no discrecional. En aras de contextualizar mi criterio, expongo a continuación los hechos que motivaron esta controversia.

## I

Cónsono con la voluntaria disposición e inclinación de nuestra sociedad hacia el arte musical, así como con el propósito de desarrollar, promover, planificar y coordinar adecuadamente los programas y operaciones de la Orquesta Sinfónica de Puerto Rico, se creó mediante legislación la Corporación de la Orquesta Sinfónica de Puerto Rico.[1] Entre otras múltiples instancias, el fin de esta corporación fue el de "[e]stablecer las normas y reglamentos necesarios para la operación y funcionamiento interno y para regir los programas y actividades de la Corporación de la Orquesta Sinfónica de Puerto Rico".[2] Por su parte, la *American Federation Musicians, Local 555*, tiene como misión velar por los derechos de los músicos de la COSPR.

---

[1] Ley Núm. 44 de 12 de mayo de 1980, según enmendada, y conocida como *Ley de la Corporación de la Orquesta Sinfónica de Puerto Rico*; 18 LPRA sec. 1162.

[2] 18 LPRA sec. 1162a.

Consecuentemente, la relación entre ambas partes se concretizó con la creación de un Convenio Colectivo el cual expiró el 30 de junio de 2014. Más adelante, mediante acuerdo mutuo, la COSPR y la Unión otorgaron la extensión del Convenio el cual, sucesivamente fue extendido conforme a la Ley Núm. 26-2017.[3] De este modo, **en aras de incrementar las aportaciones monetarias al plan de pensiones de los músicos**, mediante el **Artículo Décimo** del Convenio Colectivo, estipularon que la COSPR realizaría un pago de 7.5% del total devengado por cada músico.[4] Por su parte, los músicos realizarían una aportación de un 3.5% del salario devengado para el mismo propósito. Respecto a los conciertos celebrados durante el Festival Casals, la COSPR aportaría 8.5% del total devengado por cada músico. Así las cosas, mediante el referido Artículo establecieron que,

> **[p]ara incrementar** el dinero disponible en dicho, plan, **la COSPR podrá realizar por lo menos cuatro (4) conciertos por cada temporada de Convenio cuyos ingresos serán destinados al Plan de Pensiones**. Los conciertos destinados al Plan de Pensiones en **cuatro (4) de ellos**, los músicos cobrarán los seis (6) servicios regulares de la semana y donarán su salario de trabajo del concierto, disponiéndose que no darán más de cuatro (4) conciertos por temporada.
>
> COSPR depositará en el Plan de Pensiones una cantidad igual a la cantidad de ingresos obtenida en cada concierto hasta dos y medio porciento [sic] (2.5%) del total de los salarios devengados por los músicos regulares por temporada. Este pareo de fondos tiene la intención de elevar los ingresos

---

[3] Ley Núm. 26 de 29 de abril de 2017, según enmendada, y conocida como *Ley de Cumplimiento con el Plan Fiscal*.

[4] Apéndice de la peticionaria, *Convenio Colectivo*, págs. 62-70.

del Plan de Pensiones de los músicos.[5] (Énfasis nuestro.)

**El acuerdo fue cumplido a cabalidad desde año 2005, no obstante, en la temporada 2018-2019, el COSPR se apartó del acuerdo estipulado en el Convenio Colectivo.[6]** En concreto, en ese periodo la COSPR no realizó los cuatro (4) conciertos según estipulado. Consecuentemente, la Unión presentó una *Querella* ante el Negociado de Conciliación y Arbitraje (NCA) adscrito al Departamento del Trabajo. El 3 de marzo de 2021 se celebró la vista de arbitraje mediante la cual ambas partes sometieron los correspondientes proyectos de sumisión.[7] En ese sentido, el árbitro determinó que la controversia a ser dilucidada era la siguiente:

> Determinar si de conformidad con las disposiciones del Convenio Colectivo aplicable, la Corporación de la Orquesta Sinfónica de Puerto Rico tiene la obligación de celebrar cuatro conciertos en cada temporada a beneficio del Plan de Pensiones. De concluir que en efecto viene obligada a realizar dichos conciertos el árbitro proveerá el remedio adecuado.[8]

Posteriormente, el 15 de abril de 2021, el árbitro del NCA determinó que, conforme al Artículo Décimo del Convenio, el COSPR no estaba obligado a celebrar los conciertos, sino que acorde con el término contractual, este último tenía discreción para celebrar o no los conciertos a beneficio del plan de pensiones. Además, como parte de su análisis, **propuso**

---

[5] Íd.

[6] Cada temporada de conciertos comienza en agosto y finaliza en julio.

[7] El árbitro designado fue el Sr. Benjamín J. Marsh Kennerley.

[8] Apéndice de la peticionaria, *Laudo de arbitraje*, págs. 95-102.

**que, como medida reparadora la COSPR realizara ocho (8) conciertos cuando se reanudaran los eventos presenciales**.

Inconforme, el 12 de mayo de 2021, la Unión compareció ante el Tribunal de Primera Instancia, Sala Superior de San Juan, a los fines de impugnar el laudo de arbitraje.[9] En esencia, expuso que el árbitro erró al no resolver la controversia conforme a derecho según estipulado en la cláusula décimo novena del Convenio,[10] y a su vez, concluir que la COSPR tenía discreción exclusiva para celebrar los conciertos. Respecto a la revisión de la determinación del árbitro adujo, que esta será final e inapelable siempre y cuando la disputa sea resuelta conforme a derecho. Asimismo, señaló que el largo periodo a través del cual se celebraron los festivales es prueba clara de que las partes han estado conformes con el contenido del contrato y que siempre estuvo presente la intención de efectuar su celebración. Por último, expresó que resolver a favor de la COSPR crearía un disloque en la administración del Convenio y fomentaría las actuaciones arbitrarias y caprichosas por parte del patrono.

Por su parte, el 27 de mayo de 2021, la COSPR presentó una *Oposición a petición de revisión del laudo arbitral* en virtud de la cual expuso que el texto de la cláusula objeto de la presente controversia era claro y libre de toda

---

[9] Apéndice de la peticionaria, *Petición de revisión de laudo arbitral*, págs. 103-114.
[10] Apéndice de la peticionaria*, Convenio Colectivo*, págs. 68-70.

ambigüedad.[11] Atendida la prueba documental y testifical provista por ambas partes, el 30 de noviembre de 2021, el foro primario emitió una *Sentencia* en virtud de la cual confirmó el laudo.[12] En esencia, resolvió que el Artículo Décimo le otorga la discreción a la COSPR sobre la celebración de los conciertos.

En desacuerdo, el 23 de diciembre de 2021, la Unión acudió mediante una petición de *Certiorari* ante el Tribunal de Apelaciones.[13] En esencia, esbozó nuevamente los planteamientos antes reseñados. Añadió pues, que conforme al Artículo 1208 del Código Civil, la validez del Convenio no podía depender del arbitrio de uno solo de los contratantes, es decir de la COSPR.[14] Por su parte, la COSPR presentó oportunamente su postura.[15] Así las cosas, el 9 de febrero de 2022, el foro intermedio emitió una *Resolución* mediante la cual denegó la expedición del auto.[16] En apretada síntesis, determinó que, acorde con la deferencia que se les ha concedido a los árbitros, no debía intervenir con la decisión del foro primario que sostuvo la validez del laudo. En suma, concluyó que no encontró indicio de parcialidad,

---

[11] Apéndice de la peticionaria, *Oposición a petición de revisión del laudo arbitral*, págs. 115-128.

[12] Apéndice de la peticionaria, *Sentencia*, págs. 130-139.

[13] Apéndice de la peticionaria, *Petición de certiorari*, págs. 33-48.

[14] 31 LPRA sec. 3373, derogado pero vigente al momento de los hechos del presente caso.

[15] Apéndice de la peticionaria, *Alegato de la parte apelada*, págs. 11-32.

[16] Apéndice de la peticionaria, *Resolución*, págs. 1-10.

arbitrariedad o error manifiesto que motivara la revocación de este.

Por discrepar del referido dictamen, el 9 de marzo de 2022, la Unión acudió ante esta Curia mediante petición de *Certiorari.* En su recurso, le imputó al Tribunal de Apelaciones la comisión del error siguiente:

> El Tribunal de Apelaciones, Panel V erró al no expedir el auto solicitado y confirmar al TPI y al árbitro en su laudo, que sostiene que, en un contrato entre las partes, sólo uno tiene la discreción para celebrar o no los contratos para el plan de pensiones de los músicos de la Orquesta Sinfónica; y erró además al interpretar que el término "podrá" no obliga al patrono a realizar los cuatro conciertos para el plan de pensiones.

En esencia, expuso que la *Sentencia* emitida por el foro primario es contraria a derecho. Por consiguiente, nos solicita que le ordenemos a la COSPR el pago de $80,000.00 a ser depositados al plan de pensiones o en la alternativa, que este último celebre ocho (8) conciertos con el mismo fin.

Examinado el recurso, el 27 de mayo de 2022 expedimos el auto solicitado. Por su parte, la COSPR acudió ante nos el 22 de agosto de 2022 mediante *Alegato* en virtud del cual, reiteró los argumentos esbozados ante el foro intermedio.

Contando así con el beneficio de la comparecencia de ambas partes, procedo a exponer mi postura.

## II

### A. Convenio Colectivo y su naturaleza contractual

Nuestro ordenamiento jurídico le reconoce a los trabajadores el derecho a "organizarse entre sí; a

constituir, afiliarse o ayudar a organizaciones obreras; a negociar colectivamente a través de representantes seleccionados por ellos, y a dedicarse a actividades concertadas con el propósito de negociar colectivamente u otro fin de ayuda o protección mutua".[17] Ante ello, se han creado los convenios colectivos como un instrumento de negociación entre los obreros y el patrono a los fines de promover la política pública del Estado en el campo laboral. De este modo, lo hemos definido como "un acuerdo por escrito efectuado entre una organización obrera y un patrono, en el cual se especifican los términos y las condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver las disputas que se susciten durante su vigencia".[18]

En ese sentido, a los convenios colectivos le es de aplicación las normas de derecho contractual. De este modo, son contratos y como tal, tienen fuerza de ley entre las partes siempre y cuando no contravengan las leyes, la moral o el orden público.[19] Así pues, una vez perfeccionados, las partes se obligan no solo a su cumplimiento, sino, a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[20] Por consiguiente, los contratantes deben atenerse a su estricto cumplimiento,

---

[17] *AAA v. UIA*, 199 DPR 638 (2018).
[18] *Cardona Caraballo v. ACT*, 196 DPR 1004, 1012 (2016).
[19] Íd., pág. 1013; 31 LPRA sec. 2994, derogado. Por ser este el derecho vigente a la fecha de los hechos, toda referencia al Código Civil se hace a su versión de 1930.
[20] 31 LPRA sec. 3375, derogado.

motivo por el cual ni el patrono ni los empleados pueden seleccionar las cláusulas a cumplir o rechazar respeto al convenio.[21] En lo que al contenido del convenio respecta, el criterio fundamental es que este abarque la intención de las partes.[22] Así pues, el magistrado debe buscar cuál fue la voluntad de las partes y si en algún momento ambas voluntades se encontraron.[23]

"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. **Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas**".[24] Ahora bien, para juzgar las **intención de los contratantes**, se debe analizar en primer plano los actos de **éstos, coetáneos y posteriores al otorgamiento**.[25] Por tanto, ante un ejercicio de hermenéutica sobre los términos contractuales, **no se le deberá dar un sentido distinto al que los otorgantes hayan propuesto al contratar**.[26] Asimismo, ante la existencia de una cláusula de la cual se deriven múltiples sentidos, tendremos que adjudicarle el significado más adecuado para que esta produzca el efecto idóneo conforme a la naturaleza y objeto del contrato.[27] Esto, máxime cuando el uso y la costumbren

---

[21] *Cardona Caraballo v. ACT*, supra, pág. 1012.
[22] José Vélez Torres, *Derecho de Contratos*, Tomo IV, Vol. II, págs. 90-91.
[23] Íd.
[24] José Vélez Torres, *Derecho de Contratos*, Tomo IV, Vol. II, págs. 92-93; 31 LPRA sec. 3471, derogado.
[25] Id., sec. 3472, derogado.
[26] Íd., sec. 3473, derogado.
[27] Íd., secs. 3474-75, derogado.

han ratificado durante un extenso periodo la intención original de los otorgantes.[28] Por tanto, "[s]i la interpretación nos coloca ante un significado útil y otro inútil, es lógico pensar en que la decisión será por el primero".[29]

### B. Laudo de arbitraje

En nuestra jurisdicción existe una vigorosa política pública a favor del arbitraje obrero-patronal.[30] Este mecanismo idóneo juega un papel fundamental para resolver pacíficamente las disputas obrero-patronales que surjan de la aplicación e interpretación de un convenio.[31] Así, pues, en su ámbito más abarcador, el árbitro desempeña la función de adjudicador en un litigio judicial.[32] Consecuentemente, el mecanismo del arbitraje es el método idóneo para la resolución de las controversias que emanen de la relación laboral.[33] Es por ello que los procedimientos de arbitraje y los laudos están revestidos con gran deferencia frente a los tribunales de justicia.[34]

No obstante, estaremos en posición de intervenir y revisar un laudo de arbitraje cuando ocurra alguna de las siguientes instancias: (1) la existencia de fraude, (2)

---

[28] José Vélez Torres, *Derecho de Contratos*, Tomo IV, Vol. II, pág. 92; 31 LPRA, sec. 3476, derogado.

[29] José Vélez Torres, *Derecho de Contratos*, Tomo IV, Vol. II, *supra*.

[30] *Unión Gen. de Trabajadores v. Centro Médico del Turabo, Inc.*, 2022 TSPR 27.

[31] Íd.

[32] *C.O.P.R. v. S.P.U.*, 181 DPR 299, 320 (2011).

[33] *Unión Gen. de Trabajadores v. Centro Médico del Turabo, Inc.*, supra.

[34] Íd.

conducta impropia, (3) falta del debido proceso de ley, (4) violación a la política pública, (5) falta de jurisdicción o (6) que el laudo no resuelva todos los asuntos litigiosos.[35] Ahora bien, **a modo de excepción y como norma de autolimitación, si las partes han acordado mediante convenio colectivo que el laudo sea emitido conforme a derecho**, los tribunales podrán intervenir para corregir **"errores jurídicos de forma cónsona con el derecho aplicable"**.[36] Es decir, este proceso resulta similar al ejecutado cuando un foro apelativo revisa una sentencia emitida por un tribunal inferior u organismo administrativo.[37] Por tanto, durante la revisión judicial, los tribunales no deben considerar los méritos de un laudo, aun cuando de haber sido la controversia inicialmente dilucidada en el ámbito judicial, la determinación hubiese sido otra.[38] En fin, bajo este escenario, el árbitro estará compelido a resolver las controversias jurídicas conforme al derecho vigente.[39] De lo contrario, la decisión arbitral será anulada. En estos casos la revisión judicial será más puntillosa, **pero los tribunales podrán enmendar errores jurídicos respecto al derecho aplicable.**[40]

---

[35] Íd.
[36] Íd.
[37] Íd.
[38] Id.
[39] *Indulac v. Central General de Trabajadores*, 207 DPR 279, 208 (2021).
[40] Íd.

## III

La controversia objeto del presente recurso es muy precisa. Se nos hacía un llamado a determinar si el lenguaje utilizado en el Artículo Décimo del Convenio Colectivo deja a discreción de la COSPR celebrar un mínimo de cuatro conciertos por temporada o si dicho lenguaje es de carácter mandatorio. Para lograr esto, soy de la opinión que debemos emprender un ejercicio de hermenéutica e interpretación contractual sobre el término "podrá" utilizado en el Artículo Décimo del Convenio Colectivo otorgado entre la COSPR y la unión de músicos que la compone. Dicho ejercicio de interpretación contractual tendría como propósito arrojar luz sobre la **intención originaria del pacto**. Adelanto, que luego de auscultar dicha intención originaria y de considerar el significado más adecuado para que el aludido artículo produzca el efecto idóneo conforme a la naturaleza y objeto del Convenio Colectivo, concluyo que el lenguaje utilizado obliga a la COSPR a celebrar un mínimo de cuatro conciertos por temporada.

Según surge del expediente, la Unión sostiene que el Tribunal de Apelaciones erró al denegar su petición de *Certiorari*, no intervenir en la revisión del laudo arbitral y concluir que el celebrar conciertos para el beneficio del plan de pensiones no era una obligación de la COSPR, por lo cual quedaba a discreción de una de las partes el llevarlas a cabo. En ese sentido, interpretar que el Artículo Décimo

del Convenio Colectivo impone una obligación de carácter discrecional, sería presumir que las partes pactaron una obligación que no busca tener efecto alguno y cuya existencia no cumple ningún propósito. Esto es así, ya que sería imposible incumplir con la obligación establecida en el referido artículo. Así pues, si el propósito de colocar por escrito en el Convenio Colectivo que la COSPR podrá realizar por lo menos cuatro (4) conciertos por cada temporada no era establecer una obligación, ¿entonces para qué se estableció un número de conciertos en específico? ¿Por qué se añade el artículo al Convenio Colectivo si este no obliga a nada? Si queda a completa discreción de la COSPR, igual daría que esta celebre uno, dos, tres o incluso ningún concierto. Es decir, bajo esa interpretación, sería imposible que la COSPR incumpla con la obligación impuesta y estaríamos interpretando que dicha oración se añadió al Convenio Colectivo sin utilidad alguna.

Ahora bien, si presumimos que la referida oración tiene el propósito de crear algún tipo de obligación conforme a la naturaleza y objeto del contrato, entonces la única interpretación lógica es que esta obliga a la COSPR a celebrar un mínimo de cuatro (4) conciertos. Donde tiene sentido considerar el carácter discrecional de la palabra "podrá" es en el número de conciertos que puede celebrar la COSPR cada temporada. Es decir, la COSPR podrá celebrar **al**

**menos cuatro conciertos y queda a su discreción celebrar una cantidad mayor.**

Si bien es cierto que debemos apegarnos al sentido literal de las palabras que comprenden un contrato, no podemos perder de perspectiva la naturaleza y el objeto del Convenio Colectivo. Ciertamente, cualquier interpretación que hagamos del lenguaje contenido en el contrato debe ir en acorde con esto. En este caso, sostengo que lo que se encuentra aquí en riesgo es la aportación patronal al plan de pensiones de los músicos de la COSPR, quienes son empleados irregulares y elemento indispensable para la existencia de dicha corporación. En ese sentido, es importante enfatizar que la frase que precede el "podrá", objeto del presente análisis, indica el propósito por el cual se está creando la obligación de celebrar por lo menos cuatro conciertos por temporada, esto es "para incrementar el dinero disponible en dicho plan". Evidentemente, para lograr ese propósito se tiene que celebrar algún número de conciertos. De ese modo, el significado más idóneo de la frase "podrá celebrar por lo menos cuatro conciertos", para que el artículo produzca el efecto que explícitamente menciona, es que la COSPR tiene que celebrar un mínimo de cuatro conciertos por temporada y queda a su discreción celebrar un número mayor.

Así pues, adjudicarle un carácter discrecional desplazaría la intención expresamente establecida de asegurar un incremento al dinero disponible en el Plan de

Retiro. Como se mencionó previamente, para juzgar la intención de los contratantes, se debe analizar en primer plano los actos de éstos, anteriores, coetáneos y posteriores al otorgamiento. En ese sentido, los actos de la COSPR tienden a mostrar que la intención de los contratantes fue otorgarle un carácter mandatorio al Artículo Décimo del Convenio Colectivo. Sobre este punto, enfatizo que desde el año 2005 hasta el 2017 estos celebraron al menos cuatro (4) conciertos por temporada. Es decir, durante este periodo extenso el COSPR no decidió ni siquiera una vez utilizar la discreción que alegan tener para celebrar un número de conciertos menor a cuatro (4). Por el contrario, actuaron de una manera que tiende a apuntar a que la intención siempre fue obligarse a celebrar un mínimo de cuatro conciertos.

Cabe resaltar, que la COSPR recurrió a distintos diccionarios para sostener su postura respecto al carácter mandatorio de la cláusula objeto de la presente controversia. En esencia, expuso que el término **"podrá"**, derivado de la acepción del verbo "poder", ha sido catalogado como *tener expedita la facultad o potencia de hacer algo*.[41] Sin embargo, al revisitar el análisis previamente esbozado por este Foro sobre la referida terminología, hemos reiterado que a pesar de que el término **"podrá" puede, como norma general, ser catalogado como**

---

[41] Real Academia Española, *Diccionario de la Lengua Española*, Edición del Tricentenario, actualizado en el 2021.

**permisible, esta característica carece de mérito cuando al darle ese significado derrote el propósito del estatuto promulgado.**[42]

Ciertamente, soy del parecer que, en el presente caso el referido término **no tiene el alcance que la COSPR forzadamente pretende adjudicarle**. Históricamente, los convenios colectivos han fungido como pactos protectores de los derechos e intereses de los empleados. Por tanto, una entidad que subsiste de la labor de empleados que cuentan con la celebración de al menos cuatro (4) conciertos por temporada para incrementar sus arcas presentes y futuras—no puede adoptar una conducta arbitraria y desfavorecedora a sus intereses. En ese sentido, **ante un lenguaje ambiguo**, me vi precisado a examinar más en detalle la verdadera intención de los otorgantes. Asimismo, este desfase me encaminó a realizar un ejercicio hermenéutico, el cual **sostiene nuestra intervención judicial de manera excepcional al haberse acordado que el laudo arbitral sería revisado conforme derecho y haber errado el árbitro en la interpretación contractual y de las disposiciones aplicables.**

A la luz de lo antes expuesto, soy de la opinión que erraron los foros inferiores al concederle deferencia a una interpretación arbitral desacertada. Confirmar la determinación del árbitro representaría un fracaso de la

---

[42] *Consejo Arqueológico v. Mun. Barceloneta*, 168 DPR 215, 227 (2006).

justicia en proteger la dignidad en el empleo de los músicos. Además, iría en contra de la intención de los otorgantes, quienes explícitamente establecieron que el propósito de celebrar por lo menos cuatro (4) conciertos es incrementar el dinero disponible en el Plan de Retiro. Asimismo, establecer dicho propósito por escrito, atado al hecho de que la COSPR consistentemente cumplió con celebrar un mínimo de cuatro (4) conciertos desde el 2005 hasta el 2017, es indicativo de la intención de obligarse a celebrar, como mínimo, dicho número de conciertos por temporada. Por consiguiente, sostengo que la actuación de la COSPR constituye un acto de mala fe, pues interrumpe la estabilidad obrero-patronal y violenta la política pública en nuestra jurisdicción al pretender eximirse unilateralmente del pago de un año correspondiente a las aportaciones del plan de pensiones.

Del expediente ante nuestra consideración, se desprende que la Unión realizó múltiples gestiones a los fines de que se celebraran los conciertos aún en un periodo posterior al pactado para lograr el recaudo. Además, recordemos, que la COSPR estuvo conteste con las múltiples extensiones del Convenio y no expresó objeción alguna respecto al Artículo Décimo, máxime cuando continuó con la ejecución de las próximas temporadas sin reparo a lo estipulado. En buen sentido de la justicia y al examinar la actuación desplegada por la COSPR durante más de dieciséis (16) años, concluyo

que, en este caso particular, el término **"podrá" tiene un carácter mandatorio y no permisible**.

Por los fundamentos que anteceden, me encuentro conteste con la Sentencia que hoy emite este Tribunal, a los fines de revocar la *Resolución* emitida por el Tribunal de Apelaciones, así como la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan. En definitivo, lo procedente es concederles un remedio equitativo a los unionados y a su vez, un periodo razonable para que la COSPR pueda completar el recaudo cónsono con lo pactado en el Convenio.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

American Federation Musicians,
Local 555 (Unión)

     Peticionaria

        v.
                               CC-2022-0146

Corporación Sinfónica de
Puerto Rico (Patrono)

     Recurrida

Opinión disidente emitida por el Juez Asociado señor MARTÍNEZ TORRES, a la que se unen los Jueces Asociados señor KOLTHOFF CARABALLO y señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 8 de marzo de 2023.

Disiento del resultado al que hoy llega la Mayoría de este Tribunal. En el auto ante nuestra consideración, el término "podrá" incorporado en el convenio colectivo suscrito entre la Corporación Sinfónica de Puerto Rico (COSPR) y la American Federation Musicians, Local 555 debió interpretarse de forma permisiva y no obligatoria, conforme a su acepción literal. No coincido con la contención de algunos compañeros de que el lenguaje de la cláusula contractual en pugna era ambiguo y por ello había que hacer un ejercicio de hermenéutica para indagar la verdadera intención de las partes. El lenguaje

utilizado en el convenio era claro y libre de toda ambigüedad. Por tanto, soy del criterio que la COSPR tenía discreción sobre la cantidad de conciertos que realizaba por temporadas.

I

Es norma reconocida que cuando los términos de un contrato son claros y no dejan margen a dudas sobre la intención de los contratantes, los tribunales debemos circunscribirnos al sentido literal de las cláusulas. Art. 1233 del Código Civil, 31 LPRA sec. 3471 (derogado). Hemos expresado que los términos de un contrato son claros cuando se pueden entender en un único sentido, sin diversidad de interpretaciones y sin necesitar razonamientos susceptibles de impugnación. Véase, C.F.S.E. v. Unión de Médicos, 170 DPR 443, 450 (2007).

> Por tanto, si los términos de un contrato o de una cláusula contractual -como en el caso de una cláusula de convenio colectivo- son suficientemente claros como para entender lo que se pacta, hay que atenerse al sentido literal de las palabras y, por ende, **los tribunales no pueden entrar a dirimir sobre lo que las partes alegadamente intentaron pactar al momento de contratar**. (Énfasis suplido). Íd.

La cláusula contractual en controversia dispone que: "para incrementar el dinero disponible en dicho, plan, **la COSPR podrá realizar por lo menos cuatro (4) conciertos por cada temporada** de Convenio cuyos ingresos serán destinados al Plan de Pensiones". (Énfasis suplido). *Convenio Colectivo*, pág. 34. Posteriormente, la cláusula añade que: "Los conciertos destinados al Plan de Pensiones en cuatro

(4) de ellos, los músicos **cobrarán** los seis (6) servicios regulares de la semana y **donarán** su salario de trabajo del concierto, disponiéndose que **no darán** más de cuatro (4) conciertos por temporada" (Énfasis suplido). Íd. A mi juicio, la frase "podrá realizar" no permite otra interpretación que no sea la que le otorga carácter potestativo a la COSPR para realizar los conciertos. Conviene destacar que en el texto citado se incluyeron otros verbos de naturaleza mandatoria como "cobrarán", "donarán" y "no darán". Sin embargo, en un claro contraste, el verbo en controversia no dice "realizará", sino "podrá realizar". No se trata de un término ambiguo, sino todo lo contrario. Así las cosas, no procedía auscultar la intención de las partes. En ausencia de ambigüedad, las cláusulas del contrato son obligatorias según fueron pactadas. S.L.G. Francis Acevedo v. SIMED, 176 DPR 372, 387 (2009).

No obstante, algunos compañeros entendieron meritorio realizar este análisis sobre la intención de las partes. De ese modo, la Opinión de Conformidad enfatizó que durante al menos 16 años la COSPR realizó cuatro conciertos todos los años y que conforme a esa práctica habitual se podía colegir que la intención de las partes fue otorgarle carácter mandatorio al término "podrá". Difiero de su conclusión por varias razones. En primer lugar, reitero que no había razón para entrar a interpretar la intención de las partes. En segundo lugar, evaluar la intención de las partes supone analizar múltiples factores, incluyendo los actos

anteriores, coetáneos y posteriores al convenio. Véase, Art. 1234 del Código Civil de 1930, 31 LPRA sec. 3472 (derogado). Sin embargo, la práctica rutinaria de la COSPR de celebrar los cuatro conciertos anualmente, sin más, no me parece suficiente para concluir que la intención de las partes al contratar fue adjudicarle carácter mandatorio a la cláusula contractual en disputa.

Además, debo aclarar que las expresiones de esta Curia en Consejo Arqueológico v. Mun. Barceloneta, 168 DPR 215, 227 (2006), surgieron en un contexto distinguible al de esta controversia. En ese caso, este Tribunal expresó que, pese a que el término "podrá" generalmente se interpreta de forma permisible y el término "deberá" de forma mandatoria, pueden interpretarse indistintamente si eso propende a cumplir el propósito de una ley. Íd. Ahora bien, en aquel entonces, la controversia versó sobre un estatuto que establecía que el Consejo Arqueológico de Puerto Rico podía recurrir al Tribunal de Primera Instancia para ordenar la paralización de una obra. Íd., pág. 223. Sin embargo, el Consejo interpretó que el término "podrá", al ser discrecional, le permitía escoger entre acudir al tribunal para solicitar una orden de paralización u ordenar ellos mismos la paralización. Íd. La expresión a la que hace referencia la Opinión de conformidad se emitió en el contexto de aclarar que, el término "podrá" le concedía discreción al Consejo para decidir si recurrir a los tribunales para solicitar la paralización de una obra, mas no para ordenar una

paralización por su cuenta. Íd., pág. 231. Entonces, no se trató de que el término "podrá" se interpretó como si fuera mandatorio, sino que su carácter discrecional no tenía el alcance que el Consejo pretendió conferirle.

II

Indiscutiblemente, la palabra "podrá" es de naturaleza permisiva y supone tener la facultad de hacer o no hacer algo.[1] No nos encontramos ante un término que tenga acepciones contrarias. Puedo reconocer el interés de proteger las pensiones de los músicos. No obstante, conforme a derecho, no nos correspondía modificar una cláusula contractual clara y específica, sino circunscribirnos a su sentido literal.

Debo añadir que impartirle carácter obligatorio a la cláusula en cuestión me parece conflictivo en términos de la aplicación del contrato. Al revocar los dictámenes de los foros inferiores que concluyeron que la COSPR tenía discreción para celebrar cuatro conciertos para incrementar las aportaciones al plan de pensiones pasamos por alto circunstancias como la pandemia del Covid-19, que pueden interferir con las labores de la Sinfónica. En general, estamos concluyendo que aun cuando la COSPR no pueda realizar sus conciertos regulares de temporada, tiene la obligación de realizar esos cuatro conciertos o emitir una contraprestación económica para los fondos de pensiones.

---

[1] Poder: "tener expedita la facultad o potencia de hacer algo". Véase, RAE, Diccionario de la Lengua Española, Edición del Tricentenario, actualizado en el 2021.

Modificar la cláusula bajo análisis, además de ser incorrecto en derecho, supone un conflicto en términos prácticos.

Por los fundamentos anteriormente expuestos, disiento respetuosamente.


                                    RAFAEL L. MARTINEZ TORRES
                                         Juez Asociado